## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LINA POSADA, JESSICA BURCIAGA, CLAUDIA SAMPEDRO, CAMILA DAVALOS, JOHN COULTER, JESSICA HINTON a/k/a JESSA HINTON, IRINA VORONINA, CIELO JEAN "CJ" GIBSON, SANDRA VALENCIA, PAOLA CAÑAS, MONICA LEIGH BURKHARDT, JENNIFER ZHARINOVA, BRENDA GEIGER, ABIGAIL RATCHFORD, JANET GUZMAN, ALYSSA NOBRIGA, and PAIGE HATHAWAY, | : : : : : : : : : : : : : : : | C.A. No.  <br><br> **COMPLAINT** <br><br> **(Jury Trial Demanded)** |
| Plaintiffs, | : : | |
| v. | : : | |
| CAZADORES BAR, LLC d/b/a MANDALA LOUNGE AND GRILL a/k/a MANDALA, | : : : : | |
| Defendant. | : : | |

Plaintiffs LINA POSADA, JESSICA BURCIAGA, CLAUDIA SAMPEDRO, CAMILA DAVALOS, JOHN COULTER, JESSICA HINTON a/k/a JESSA HINTON, IRINA VORONINA, CIELO JEAN "CJ" GIBSON, SANDRA VALENCIA, PAOLA CAÑAS, MONICA LEIGH BURKHARDT, JENNIFER ZHARINOVA, BRENDA GEIGER, ABIGAIL RATCHFORD, JANET GUZMAN, ALYSSA NOBRIGA, and PAIGE HATHAWAY (collectively, "Plaintiffs"), file this Complaint against CAZADORES BAR, LLC, d/b/a MANDALA LOUNGE AND GRILL a/k/a MANDALA ("Defendant") respectfully allege as follows:

## <u>BACKGROUND</u>

1.     This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club,

Mandala Lounge and Grill a/k/a Mandala located at Passaic, New Jersey (**hereinafter referred to as the "Night Club" or "Mandala"**).

2.      As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Misappropriation of Likeness; d) Unfair Competition/False Endorsement N.J.S.A. 56:4-1, et.seq.; e) Negligence/Respondeat Superior; and f) Unjust Enrichment.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant CAZADORES BAR, LLC, is a limited liability company formed under the laws of the state of New Jersey, with its principal place of business located at 9 Viewmont Terrace, Little Falls, New Jersey, 07424. Upon information and belief, CAZADORES BAR, LLC operates Mandala Lounge and Grill, which is located at 246 3rd St, Passaic, New Jersey 07055.

8.      Venue is proper in the United States District Court for the District of New Jersey because Defendant's principal place of business is located in Little Falls, New Jersey, Passaic County.

9.    A significant portion of the alleged causes of action arose and accrued in Little Falls, New Jersey and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Little Falls, New Jersey.

## PARTIES

### *Plaintiffs*

10.    Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

11.    Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

12.    Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

13.    Plaintiff Camila Davalos ("Davalos") is a well-known professional model, and a resident of Miami-Dade County, Florida.

14.    Plaintiff John Coulter ("Coulter") is a well-known professional model, and a resident of Los Angeles County, California.

15.    Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

16.    Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

17.    Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

18.    Plaintiff Sandra Valencia ("Valencia") is a well-known professional model, and a resident of Colombia.

19.    Plaintiff Paola Cañas ("Cañas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

20.    Plaintiff Monica Leigh Burkhardt ("Burkhardt") is a well-known professional model, and a resident of Suffolk County, New York.

21.      Plaintiff Jennifer Zharinova ("Zharinova") is a well-known professional model, and a resident of Los Angeles County, California.

22.      Plaintiff Brenda Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

23.      Plaintiff Abigail Ratchford ("Ratchford") is a well-known professional model, and a resident of Los Angeles County, California.

24.      Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

25.      Plaintiff Alyssa Nobriga ("Nobriga") is a well-known professional model, and a resident of Los Angeles County, California.

26.      Plaintiff Paige Hathaway ("Hathaway") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendant***

27.      Defendant, CAZADORES BAR, LLC, is a limited liability company formed under the laws of the state of New Jersey and registered to conduct business in New Jersey. During times relevant to this action, CAZADORES BAR, LLC operated Mandala Lounge and Grill.

28.      Service of process may be perfected upon Defendant CAZADORES BAR, LLC by serving the registered agent for service of process, Amaury Gutierrez, who can be located at 102 Harrison Street, Garfield, NJ 07505.

**FACTUAL ALLEGATIONS**

29.      Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

30.      Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and

brands, for which they model.

31.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

32.    In the case of each Plaintiff, this apparent claim was false.

33.    Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

34.    No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

35.    Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

36.    Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Bésame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swimwear, Ujeans, as well as many others. She currently has 102,000 Instagram followers, 4,120 YouTube subscribers, 17,300 Facebook followers, and over 5,200 Twitter followers.[1]

37.    That we know of, Posada is depicted in the photo in Exhibit "A" to promote Mandala on its Facebook page. This Image was intentionally altered to make it appear that Posada was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

38.     Posada has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.     Burciaga is a model and a business owner. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to Stuff Magazine. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won Stuff Magazine's, "Neighborhood Knockout," contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports Fight Night Round 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine, and many others. Burciaga was the Playboy Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series The Girls Next Door. She has various business ventures, including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.4 million followers on Instagram, over 3.2 million Facebook followers, and over 165,500 followers on X (formerly known as Twitter).

40.     That we know of, Burciaga is depicted in the photo in Exhibit "B" to promote Mandala on its Facebook page. This Image was intentionally altered to make it appear that Burciaga was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

41.     Burciaga has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.     Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has

appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).

43.    That we know of, Sampedro is depicted in the photo in Exhibit "C" to promote Mandala on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Sampedro was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

44.    Sampedro has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.    Davalos is a model whom by the time was 18, her career was already established in Colombia as one of the most famous and successful models there. At age 22, Ms. Davalos became the face of the world famous Bésame lingerie line and was in high demand in the United States. Since then, Ms. Davalos has earned a reputation as a Latin Super Model, appearing in hundreds of magazine editorials, catalogues, runway shows and covers. Some of her clients include Maxim Magazine, Imagen Magazine, Bésame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans, and Satori.

46.    That we know of, Davalos is depicted in the photo in Exhibit "D" to promote Mandala on its Facebook page. This Image was intentionally altered to make it appear that Davalos was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

47.     Davalos has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48.     Coulter was born in Arizona. He spent two years studying illustration on a full art scholarship at the University of Arizona before continuing his studies at the prestigious Art Center College of Design in Pasadena. Coulter also pursued performing arts, which led him to "The Happiest Place on Earth". At Disneyland, he worked both as an artist in the entertainment art department and moonlighted as Prince Charming in the Main Street Electrical Parade before going on to play other Disney characters. One of the highlights was playing Tarzan in the opening cast of Tarzan Rocks. His princely charm also took him to Tokyo Disneyland, where he continued to perform several roles. Coulter's modeling career has lasted over 20 years leading him to New York and Europe where he worked with renowned photographers Ellen Von Unwerth and David Lachapelle. He shot a Jeans Campaign with Cindy Crawford and a MAC Cosmetics campaign with Mary J. Blige and Lil' Kim. He has walked the runways with Naomi Campbell, Kate Moss, Marcus Schenkenberg and Tyson Beckford and has appeared in television commercials with Paris Hilton, Heidi Klum, Kristen Chenoweth, and Karolina Kurkova. Coulter has been on Tyra Bank's America's Next Top Model, in a Madonna video directed by Guy Ritchie, and can be seen on the Britney Spears' Blackout Album as the controversial priest. He is most recognizable with his clothes off, gracing the packaging and ads for Joe Boxer, Fruit of the Loom, Murano, Undergear and International Male. His fine arts background has manifested itself in many areas such as costuming, photo and fashion styling, as well as hair and makeup.

49.     That we know of, Coulter is depicted in the photo in Exhibit "E" to promote Mandala on its Facebook page. This Image was intentionally altered to make it appear that Coulter was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

50.     Coulter has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.     Hinton was discovered by a talent manager at a wedding at age 14. By age 16 she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 3.8 million followers on Facebook, Instagram and X (formerly known as Twitter).

52.     That we know of, Hinton is depicted in the photo in Exhibit "F" to promote Mandala on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Hinton was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

53.     Hinton has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has

received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

54.    Voronina is an international model and actress. After becoming Playboy's Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as FHM, Maxim, Playboy (in 20 countries), Max, Ocean, Shape, 944, Knockout, Q, People, Kandy, Rukus, Vape and Browz magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands.  In 2013, Voronina was named Kandy Magazine's Model of the Year as a result of her fans downloading the highest number of digital issues that year. Voronina got her first big screen break in "Reno 911! Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, X (formerly known as Twitter) and YouTube. She has more than 5.6 million social media followers.

55.    That we know of, Voronina is depicted in the photo in Exhibit "G" to promote Mandala on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Voronina was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

56.    Voronina has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and

will continue to suffer, damages as a result of same.

57.    Gibson is an American model who enjoys great success in her industry. Gibson was the Import Tuner magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including FHM, American Curves, Supreme, MuscleMag International, Muscle & Fitness, and Teeze, Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing. Gibson has 71,600 Instagram followers.

58.    That we know of, Gibson is depicted in the photo in Exhibit "H" to promote Mandala on its Facebook page. This Image was intentionally altered to make it appear that Gibson was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

59.    Gibson has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

60.    Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Bésame Lingerie. She currently has 151,000 Instagram followers and over 72,300 X (formerly known as Twitter) followers.

61.    That we know of, Valencia is depicted in the photo in Exhibit "A"" to promote Mandala on its Facebook page. This Image was intentionally altered to make it appear that

Valencia was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

62.    Valencia has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

63.    Cañas is a Colombian-born model now residing and working in the United States. With over twelve years in the industry, she has found great success as a model, host, runway model, and actress. Cañas has worked runway shows in her native Colombia, as well as in Mexico, Ecuador, the United States, and most recently Paris, France. She is best known for appearing on the cover of Playboy Mexico in May 2018. She has also led international campaigns and was a contracted model for Curve's worldwide lingerie line. In Dubai, United Arab Emirates, Cañas was chosen as the face of the Masters Golf Tournament and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked with international brands and labels such as SOHO, KISS Underwear, Salon International, Zona Rosa, and Esteban Escobar. Cañas has appeared on numerous TV shows like FOX Sports and on networks such as Telemundo and TV Azteca. She continues to build an impressive profile and is in high demand in Miami, FL, New York, NY, and Los Angeles, CA. Cañas has over 1 million Instagram followers

64.    That we know of, Cañas is depicted in the photo in Exhibit "J" to promote Mandala on its Facebook page. This Image was intentionally altered to make it appear that Cañas was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

65.    Cañas has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

66.     Burkhardt worked as a bartender and dental assistant prior to being encouraged by her childhood friend and fellow Playboy Playmate, Courtney Culkin, to try out. She has modeled for the famous men's magazine in various newsstand special editions (she was featured on the cover of "Playboy's College Girls" in September 2005). She was the Playboy Cyber Girl of the Week for August 29, 2005 and the Cyber Girl of the Month for December, 2005. Burkhardt was subsequently named Cyber Girl of the Year for 2006. Moreover, she was the Playmate of the Month in the March, 2006 issue of Playboy and graced the cover of the August, 2006 issue. Burkhardt has appeared in several Playboy videos and on a handful of episodes of the reality TV series, The Girls Next Door (2005). She has acting roles in the movies, The Duel (2006), The Pool Boys (2009), The Gentleman (2007) and Road Raiders (2000). Monica has popped up as an extra not only in Spider-Man 3 (2007), but also on episodes of both Entourage (2004) and CSI: Miami (2002).

67.     That we know of, Burkhardt is depicted in the photo in Exhibit "K" to promote Mandala on its Facebook page. This Image was intentionally altered to make it appear that Burkhardt was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

68.     Burkhardt has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

69.     Zharinova is a highly successful model and actress. Zharinova has modeled for runway, print, commercial, and theatrical jobs for Great Clips, Chevrolet Malibu, 24 Hour Fitness, Caesar's Palace, Sprint, Levi's, Aveda, Target, and Guess among others.

70.     That we know of, Zharinova is depicted in the photo in Exhibit "L" to promote Mandala on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Zharinova was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

71.    Zharinova has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

72.    Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

73.    That we know of, Geiger is depicted in the photo in Exhibit "M" to promote Mandala on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Geiger was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

74.    Geiger has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

75.    Ratchford, born in Pennsylvania, is an American model and aspiring actress known for taking the Internet by storm in 2013. Abigail's deft use of social media, combined with the provocative pictures showcasing the brunette's 36DD-24-36 frame, proved a winning combination. This formula helped land her on numerous men's websites, a six-page print spread in a popular Australian men's magazine, and also led to her being selected to audition for parts in Maxim, a feature film, and television shows found on ABC and E! Networks. She has over 9.1 million followers on Instagram, over 4.1 million followers of Facebook, and over 1 million followers on Twitter.

76.     That we know of, Ratchford is depicted in the photo in Exhibit "N" to promote Mandala on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Ratchford was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

77.     Ratchford has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

78.     Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

79.     That we know of, Guzman is depicted in the photo in Exhibit "O" to promote Mandala on its Instagram page. This Image was intentionally altered to make it appear that Guzman was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

80.     Guzman has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

81.     Nobriga is trained as a psychotherapist and works as a professional coach with individuals and corporations, both nationally and internationally. She obtained her master's degree

in clinical psychology, specializing in Mind-Body Psychotherapy from The Chicago School of Professional Psychology.  Alyssa is currently on faculty at the University of Santa Monica where she holds a second master's degree in Spiritual Psychology, with an emphasis on Consciousness, Health and Healing.  She is a graduate of The School for The Work, has extensive training in Imago Couples Therapy as well as an advanced certification from the Hakomi Institute in mindfulness-based therapeutic practices and is certified as a success coach. Alyssa is a spiritual advisor for CEOs and senior executives, she facilitates transformational group intensives and women's leadership and empowerment workshops. She also leads wellness retreats around the world centered on mindfulness and conscious living as well as 6-month mastermind intensives supporting women in standing forward as leaders and soul-centered professional coaches. She is a contributor to various publications such as *The Huffington Post*, *Positively Positive* and *The Daily Love* and is a featured expert on Deepak Chopra's YouTube channel. Alyssa's enthusiasm for this work has led her to develop a unique way of blending multiple modalities and life experiences to support people in a soulful and practical way. Her intention and vocation is to assist others in leading more open, authentic, loving, and fulfilling lives

82.    That we know of, Nobriga is depicted in the photo in Exhibit "P" to promote Mandala on its Facebook page. This Image was intentionally altered to make it appear that Nobriga was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

83.    Nobriga has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

84.    Hathaway is an American model, spokeswoman, business owner, and social media superstar. Hathaway was ranked second at the 2012 Ronnie Coleman Classic, the biggest NPC statewide competition in the United States. The following year, she was named the FLEX August 2013 Bikini Model Search Winner. Hathaway has graced the covers of many prestigious

16

magazines, such as Fitness Gurls, Women's Health and Fitness, Oxygen, Inside Fitness, MOST, Livid Magazine, Muscular Development, Dakini Magazine, and many more. She endorsed Shredz for three years and participated in the BodyPower UK Expo 2013 as part of the Gymshark team. Hathaway has her own membership program available on her website and also provides separate personalized diet and workout regimes for subscribers. She has become a huge name in fitness largely thanks to her social media presence. Hathaway was the latest ambassador for F45 Training, a global fitness franchise. She has a combined 9,923,695 fans on Facebook, Instagram, Twitter, and YouTube.

85.    That we know of, Hathaway is depicted in the photo in Exhibit "Q" to promote Mandala on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Hathaway was either an employee working at Mandala, that she endorsed Mandala, or that she was otherwise associated or affiliated with Mandala.

86.    Hathaway has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

87.    Defendant operates (or operated, during the relevant time period,) a so-called Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

88.    Defendant owns, operates, and control Mandala's social media accounts, including its Facebook, Twitter, and Instagram accounts.

89.    Defendant used Mandala's Facebook, Twitter, and Instagram accounts to promote Mandala's, and to attract patrons.

90.    Defendant did this for their own commercial and financial benefit.

91.    Defendant was used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential

clientele that each Plaintiff either worked at Mandala, endorsed Mandala, or was otherwise associated or affiliated with Mandala.

92.    Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Mandala to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

93.    Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Mandala, and at no point have any of the Plaintiffs ever endorsed Mandala or otherwise been affiliated or associated with Mandala.

94.    All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

95.    Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

96.    Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

97.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

98.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

99.    Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

100.    Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Mandala.

101.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

102.    In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Mandala.

103.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

104.    Defendant has never obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

105.    Defendant has never paid any Plaintiff for its use of her Images on any promotional materials, including Mandala's website, Twitter, Facebook, or Instagram accounts.

106.    Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)

107.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

108.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

109.    Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

110.    Thus, this was done in furtherance of Defendant's commercial benefit.

111.    Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

112.    Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

113.    As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

114.    Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's

115.    establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

116.    Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

117.    Defendant knew that their use of P Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

118.    Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

119.    As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

120.    Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

121.    Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

122.    WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful

use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

123.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

124.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

125.    Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

126.    Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

127.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and

market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

128.    Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

129.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

130.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

131.    Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

132.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

133.    Defendant's wrongful conduct as described herein was willful.

134.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

135.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

136.    The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

137.    Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

138.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(Misappropriation of Likeness)**

139.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

140.    Plaintiffs have a right to control the commercial use of their names, images, and likenesses. Under New Jersey law, the unauthorized use of a person's image or likeness for a predominately commercial purpose is unlawful.

141.    Defendant's use of Plaintiffs' images and likenesses to advertise its business constitutes a use for commercial purposes.

142.    Defendant's use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value.

143.    Defendant never obtained Plaintiffs' consent for the use of their images and likenesses.

144.    Defendant's use of each Plaintiffs' photographs and likenesses was willful and deliberate.

145.    As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's establishment, Defendant enjoyed increased revenues and profits.

146.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

## FOURTH CAUSE OF ACTION
### (Unfair Competition/False Endorsement N.J.S.A. 56:4-1, *et.seq.*)

147.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

148.    The aforesaid acts of Defendant's unauthorized use of Plaintiffs' images and likenesses in connection with creating the false impression that they were affiliated with and endorsed Defendant's business constitutes unfair competition under N.J.S.A. 56:4-1.

149.    As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's establishment, Defendant enjoyed increased revenues and profits.

150.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

151.    Defendant's wrongful and deliberate conduct has caused significant damage to Plaintiffs, both directly and indirectly, and Plaintiffs respectfully request treble damages as authorized by N.J.S.A. 56:4-2.

### FIFTH CAUSE OF ACTION
**(Negligence/Respondeat Superior)**

152.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

153.    Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and nonconsensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

154.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in its advertising practices.

155.    Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on their property and publicity rights.

156.    Similarly, Defendant further owed a duty of care to Plaintiffs to ensure that its promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendant.

157.    Defendant breached its duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

158.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and New Jersey law, were not violated. Defendant breached its duty of care to Plaintiffs by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

159.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

160.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

<u>**SIXTH CAUSE OF ACTION**</u>
**(Unjust Enrichment)**

161.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

162.    As set forth in detail above, Defendant published Plaintiffs' Images in order to promote the Defendant's establishment to the general public and potential clientele.

163.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendant.

164.    Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

165.    Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' Images.

166.    Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to its establishment.

167.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

168.    As such, Plaintiffs have been damaged in an amount to be determined

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a)    For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b)    For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Mandala's Night Club;

(c)    For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d)    For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(e)    For such other and further relief as the Court may deem just and proper.

OF COUNSEL:
John V. Golaszewski, Esquire*
THE CASAS LAW FIRM, PC
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@talentrights.law

Dated: January 30, 2025

*Pro Hac Vice Application Forthcoming

*/s/ Gerald B. Baldino, III*
Gerald B. Baldino, III, Esquire
Attorney I.D. No. 295012019
SACCHETTA & BALDINO
24 S. Broad Street
Woodbury, NJ 08096
P: (856) 845-4400
F: (856) 845-0400
gbaldino@sbattorney.com
*Attorney for Plaintiffs*